## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

QUINTINA CHENEAU
            Plaintiffs,

v.

BANK OF AMERICA, N.A.,
AND
CROUCH & RAYMER
            Defendants.

CIVIL ACTION

FILE NO: 2:14-CV-000384-NJB-KWR

JURY TRIAL DEMANDED

## MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Quintina Cheneau (hereinafter "Plaintiff") submits this memorandum in support of her Motion for Preliminary Injunction and TRO.  For the reasons stated herein and in Plaintiff's Motion for Preliminary Injunction and TRO, the Court should issue a preliminary injunction preventing the defendants, BANK OF AMERICA, N.A. and CROUCH & RAYMER (hereinafter collectively referred to as "Defendants") from continuing to foreclose upon Plaintiff's home via executor process until this case is resolved.

TENDERED FOR FILING

OCT 0 8 2015

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

2

## I.    FACTS

Plaintiff is the owner of the subject property located at 6 Lake Bernard Court, Harvey, Louisiana 70058. Sometimes in March 2013 defendants initiated foreclosure proceedings via executor process against the Plaintiff in the 24th Judicial District Court in and for Jefferson Parish Louisiana alleging that Plaintiff defaulted on her loan. Contemporaneously Plaintiff filed Bankruptcy which summarily stayed the foreclosure. In November 2013 Plaintiff's Bankruptcy was dismissed. Thereafter, sometimes in January 2014, defendants reinstituted foreclosure proceedings via executor process against the Plaintiff's property.  Accordingly, Plaintiff brought suit in this court for declaratory relief, breach of contract, negligence, and violations of the FDCPA, violations of TILA and violations RESPA for defendants behavior related to the attempted foreclosure of her home. Defendants have scheduled Plaintiff's home to be seized and sold in a Sheriff's sale on October 14, 2015, at 10.00 A.M. Plaintiff previously filed a motion for preliminary injunction which this Court dismissed **without prejudice**. In addition, this case was administratively closed until October 4, 2015. Plaintiff now submits a motion for preliminary injunction and TRO.

## PRELIMINARY INJUNCTIVE RELIEF IS WARRANTED

A preliminary injunction is typically granted during the pendency of a lawsuit to prevent irreparable injury that may result before a final decision on the merits. *Compact Van Equipment Co. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir.1978); *Canal Authority of Florida* 1097\*1097 *v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). Thus, to obtain a preliminary injunction, a movant must prove a substantial threat that he will suffer irreparable harm if the injunction is not granted. *City of Meridian v. Algernon Blair, Inc.,* 721 F.2d 525 (5th Cir.1983)

In the Fifth Circuit, the proper factors to consider when determining whether to issue a preliminary injunction are whether:

    (a) there exists a substantial likelihood that the mover will prevail on the merits;

    (b) there exists a substantial threat of irreparable harm if the injunction is not granted;

    (c) the threatened injury to the mover outweighs the threatened harm to the non-mover; and

    (d) the grant will not disserve the public interest.

*Canal Authority of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1979).

A preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements. *Kern River,* 899 F.2d at 1462. See also Nichols v. Alcatel USA, Inc., 532 F. 3d 364 (5th Cir. 2008).

A mover for a preliminary injunction has the burden of persuasion on all four of these factors. *Cherokee Pump & Equipment Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994). However, while these four factors are interrelated, the quantitative value of each factor is not fixed. *Apple Barrel Productions. Inc. v. Beard*, 730 F.2d 384, n.11 (1984) *citing State of Texas v. Seatrain Int'l S/A*, 518 F.2d 175, 180 (5th Cir. 1975); *Siff v.   State Democratic Executive Committee*, 500 F.2d 1307 (5th Cir.  1974). Thus, the burden of persuasion for each factor is not static. *See Apple Barrel Productions. Inc. v. Beard*, 730 F.2d 384, n.11 (1984) citing *State of Texas v. Seatrain Int'l S/A*, 518 F.2d 175, 180 (5th Cir. 1975). Instead a "sliding scale" analysis which takes into account the sufficiency of the mover's showing for each factor is proper. *Apple Barrel Productions*, 703 F.2d at n.11; *Seatrain Int'l S/A,* 518 F.2d at 180; *Siff,* 500 F.2d 1307. Accordingly, a strong showing for one factor may reduce the requisite showing of another. *Id.*

As set forth below, the above factors weigh in favor of Plaintiff's request for a preliminary injunction.

## A. There is a Substantial Likelihood that Plaintiff Will Prevail on the Merits of her Claims

### 1. Breach of Contract

In Louisiana the essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee. See 1436 Jackson Joint Venture v. World Constr. Co., Inc., 499 So.2d 426, 427 (La. App. 4th Cir.1986). See also Hercules Machinery Corp. v. McElwee Bros., Inc., 2002 WL 31015598 at *9 (E.D.La.9/2/02) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages").

In this case, the Complaint alleges that Plaintiffs' Security Deed, under section 22 of the Non-Uniform Covenants, placed certain limitations on BANA and Crouch's ability to immediately accelerate the debt and foreclose on their home in the event of a default. Specifically, the Complaint alleges that BANA and Crouch were contractually required, before initiating and commencing foreclosure proceedings, to provide Plaintiffs, with a notice of default stating "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and that failure to cure on or before date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

The Complaint further alleged that BANA breached its obligation to by failing to provide Plaintiffs with the required notice of default stating "<u>a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and that failure to cure on or before date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.</u>" The complaint also alleged that BANA nonetheless continued to exercise the power of sale, through Crouch, despite the clear and unambiguous language in the Security Deed expressing the intent of the parties that the rights of acceleration and foreclosure do not accrue under the Security Deed unless the precondition to advise Plaintiffs of their right to bring a court action to assert the non-existence of a default or any other defense of the borrower prior to commencing any foreclosure proceedings have been met. Finally, Plaintiffs alleged that they have been damaged by BANA's breach of contract because BANA has reported the foreclosure default to Equifax, Trans Union and Experian which has lowered their credit score and blocked them from obtaining credit. Plaintiffs also alleges to have been further damaged by BANA's advertisement of their home for foreclosure causing them embarrassment, mental anguish and emotional distress. Accordingly, Plaintiff stands a strong chance of succeeding on the merits of her breach of contract claim.

**2.** Negligence Claims

For liability based upon negligence to attach, a plaintiff must prove the following: 1) the defendant owed a duty to plaintiff; 2) the duty owed was breached; 3) the harm caused was within the scope of the breached duty, and; 4) the conduct in question was a cause-in-fact of the resultant harm. Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993). Duty questions, including whether a duty extends to protect a particular plaintiff against a particular harm, are essentially legal questions. Montgomery v. Max Foote Construction Company, 621 So.2d 90 (La. App. 2d Cir.1993). The particular facts and circumstances of each individual case determine the extent of any duty owed. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).

In this case, BANA and Crouch was required by section 22 of the Non-Uniform Covenants of the Security Deed contract to provide Plaintiffs with a notice of default stating "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and that failure to cure on or before date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale" prior to commencing foreclosure proceedings and before

8

threatening a foreclosure sale of Plaintiffs' home. The Plaintiff alleges that because of Defendants actions described herein she has suffered a stroke, emotional distress, mental anguish, inconvenience and anxiety. Plaintiff further alleges that she has also been damaged by the negative entries on her credit report of the purported indebtedness related to this foreclosure and cannot obtain credit as a result thereof. Accordingly, Plaintiff stands a strong chance of succeeding on the merits of her negligence claims.

## 3. TILA Claims

As and for Plaintiff's claim against BANA under TILA, Plaintiff alleges that, pursuant to 15 U.S.C. 1641(f), Plaintiff requested the identity of the owner of her loan in writing on January 27, 2014, and that, to date, BANA has not provided her with the <u>true</u> identity of the owner of her loan.

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available ... and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). Courts broadly construe TILA in favor of consumers. Section 1641(f) requires that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." BANA claims that it is a creditor under Plaintiff's mortgage loan. Thus, Plaintiff s has alleged enough

facts to support her claim that BANA violated Section 1641(f) of TILA, and such that there is a strong probability that Plaintiff may succeed on the merits of her TILA claims.

### 4. FDCPA Claims

The Complaint alleges that the debt owed pursuant to the subject Note and Security Deed is a consumer debt pursuant to the FDCPA that BANA and Crouch are debt collectors as that term is defined under the FDCPA, and that

BANA and Crouch violated the FDCPA by threatening legal action regarding the Note and Security Deed, without having met all the preconditions to acceleration and foreclosure as required in section 22, under Non-Uniform Covenants of Plaintiffs' Security Deed. Plaintiffs allege that BANA did not acquire her Note and Security Deed until after the debt was alleged to be in default.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA imposes strict liability on debt collectors who fail to comply with its provisions when collecting a debt. Alphonse v. Arch Bay Holdings, Llc, Dist. Court, ED Louisiana (2013)(citation omitted). Conduct prohibited by the FDCPA includes harassing, oppressive or abusive conduct (15 U.S.C. § 1692(d)),

the "use of false, deceptive, or misleading representations or means in connection with the collection of any debt" (15 U.S.C. § 1692(e)), the use of "unfair or unconscionable means" to collect a debt (15 U.S.C. § 1692(f)) and failure to validate a debt (15 U.S.C. § 1692(g)), (15 U.S.C. § 1692 e (5)), forbids … threatening to take any legal action that cannot be legally taken…— conduct in which Plaintiff contend BANA and Crouch has engaged.

Under the FDCPA, a "debt collector" is defined as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . The term does not include-- (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; . . . [or] (iii) concerns a debt which was not in default at the time it was obtained by such person . . . . Bridge v. Ocwen, Civil Action File No. 09-4220 (6th Cir. April 30, 2012) *citing* 15 U.S.C. § 1692a(6).

11

For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. Id. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. Id. *citing* Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106-8 (6th Cir. 1996); see also Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985). This interpretation of the Act is supported by Congress's intent in passing it. Id.

In the instant case, it is clear from the allegations of the Complaint that BANA became Plaintiff's creditor via assignment of the Note and Security Deed

after Plaintiff's allegedly defaulted. Plaintiff's loan was assigned to BANA on November 1, 2011. Plaintiff alleges that she was alleged to have defaulted on her loan prior to the assignment to BANA in 2011. Because BANA obtained the debt after an alleged default, Plaintiff can establish that BANA and incidentally Crouch, are debt collectors that attempted to collect a debt.

While Defendant Crouch tries to absolve itself of liability for its violations of the FDCPA claiming it is simply a law firm pursuing a foreclosure on behalf of its client. It is now well established that attorneys who regularly engage in debt collection activities on behalf of their clients are "debt collectors" subject to the

12

requirements of the FDCPA. See Heintz v. Jenkins, 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); Kaltenbach, 464 F.3d at 527 ("Heintz stands for the proposition that litigating lawyers are not exempt from the FDCPA if they otherwise qualify as debt collectors."). As the Fifth Circuit explained in *Kaltenbach,* under § 1962a(6), the general definition of debt collector, "a party's general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector." Kaltenbach, 464 F.3d at 524. Thus, "[w]hether a debt collector's specific action qualifies as the collection of a debt may or may not be relevant when determining whether the party must comply with other, specific substantive requirements of the FDCPA, but that is a separate inquiry from whether the party meets the general statutory definition of a debt collector." Id. See also Overton v. Foutty & Foutty, LLP, No. 1:07-cv-0274-DFH-TAB, 2007 WL 2413026, *4 (S.D.Ind. Aug. 21, 2007) (in determining whether party is "debtor collector," focus "is not on the events of the particular transaction but on the principal purpose of the defendant's business and/or the defendant's regular activities") (citing Kaltenbach). In the case of Glazer v. Chase Home Finance LLC, et al., 2013 WL 141699 (6th Cir., Jan. 14, 2013), the court, in considering the question whether or not a law firm conducting a foreclosure met the qualification as a debt collector under the FDCPA determined that, "... by instituting a foreclosure action, the law firm was engaged in debt collection, and was therefore subject to the provisions of the Act."

13

In the case before the Court, Defendant Crouch was put on notice at the initiation of this Complaint that Plaintiff did not receive the required notice of default stating "<u>a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and that failure to cure on or before date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale</u>" prior to commencing foreclosure proceedings and before threatening a foreclosure sale of Plaintiff's home. Defendant Crouch took no action to be sure that petitioner received the required notice. At minimum, Defendant Crouch should have made sure that all prerequisites to pursuing foreclosure had been met before it undertook initiating an executory process against the Plaintiff's home. This Defendant Crouch did not do. Moreover, Defendant Crouch continued to pursue foreclosure against the Plaintiff through the executory process without having met the preconditions to foreclosure in accordance with Plaintiff's mortgage loan contract. Clearly, Plaintiff has sufficiently pled a cause of action against BANA and Crouch for their violations of the FDCPA. and may succeed on the merits.

**5.** Declaratory Relief

The Declaratory Judgment Act states that a declaratory judgment may be sought in an effort to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." See 28 U.S.C. § 2201. The Declaratory Judgment Act states that a declaratory judgment may be sought in an effort to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." See 28 U.S.C. § 2201. A party seeking declaratory relief under the statute must present an "actual controversy" in order to satisfy the "case or controversy" requirement of Article III. 28 U.S.C. § 2201(a). The Supreme Court addressed this requirement in the context of a declaratory judgment action in MedImmune v. Genentech, 549 U.S. 118 (2007). In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative, threat of future injury.

Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief... if unaccompanied by any continuing,

present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgment. Bauer v. Texas, 341 F.3d 352, 358 (5th Cir.2003).

In this case, the Complaint alleges that BANA and Crouch unlawfully proceeded with an intentional attempted wrongful foreclosure of Plaintiff's home without having provided Plaintiffs' with a notice of default stating "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and that failure to cure on or before date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale" prior to commencing foreclosure proceedings and before threatening a foreclosure sale of Plaintiff's home. There can be no question that Plaintiff has alleged facts sufficient to demonstrate real and immediate threat of continuing harm from BANA and Crouch's misconduct in the future. Additionally, "the Plaintiff is in doubt and uncertain as to her rights and relations under the alleged mortgage loan contract." See paragraphs 26 and 27 of Amended Complaint. Thus, as set forth in the Amended Complaint, declaratory relief "is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and

when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004). As such, there is a strong showing that Plaintiff may prevail on the merits of her declaratory relief claim.

## B. Plaintiff Faces a Substantial Threat of Irreparable Harm if the Preliminary Injunction Is Not Issued.

The second factor to be reviewed in determining whether a preliminary injunction should issue is the substantial threat of irreparable harm to the mover. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir.1987). In cases where monetary compensation cannot remedy the mover's injury, the Fifth Circuit has found the injury irreparable. *See Spiegel v. City of Houston,* 636 F.2d 997, 1001 (5th Cir.1981) (irreparable harm is shown when the threat of harm cannot be undone through monetary remedies). Here, the Plaintiff is not merely under a threat of irreparable harm as a result of defendants' wrongful conduct; harm has already begun and will continue unless the Court immediately grants the requested relief. Plaintiff has already suffered a stroke due to the stress and strain she has experienced resulting from Defendants' wrongful and illegal behavior as described in her Amended Complaint. (See paragraph 21 of Amended Complaint) Additionally, "The loss of plaintiff ['s] home . . . would doubtless cause what in law is properly regarded as irreparable injury." Redgate v. Boston Redevelopment Authority, 311 F.Supp. 43, 47 (D. Mass 1969).

Plaintiff has thus demonstrated the likelihood of irreparable injury absent judicial intervention.

## C. Plaintiff's Threatened Injury Outweighs the Threatened Harm to the Defendants

Defendants will suffer no undue hardship by a preliminary injunction because Defendants have no right to continue to engage in unlawful and illegal foreclosure practices. Moreover, Defendants have no right to unjustly separate Plaintiff from her property without complying with the terms of their contractual obligation. Therefore, the balance of injuries is heavier for the Plaintiff than the Defendants if the injunction does not issue.

## D. The Granting of an Injunction Will Serve the Public Interest.

The final factor the court must consider is whether or not granting the injunction will disserve the public interest. It will not. To the contrary, it is in the public interest that an injunction issue. A plaintiff seeking a temporary restraining order or preliminary injunction must demonstrate that an injunction is in the public interest. Winter, 129 S.Ct. at 374. "[T]he party seeking the injunction bears the burden of demonstrating each factor." Food and Water Watch, Inc. v. U.S. Army Corps of Engineers, 570 F.Supp.2d 177, 183 (D. Mass. 2008), citing Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70, 415 U.S. 423,441 (1974).

"[T]he adverse impact foreclosures have on households and communities, as well as the societal benefits of home ownership, demonstrate the strong public interest in preventing unlawful foreclosures." Sharma v. Provident Funding Associates, 2010 WL 143473 at*2 (N.D. Cal. Jan. 08, 2010).

"[T]he public interest still favors keeping families in their homes until they have been heard on the merits." Horton v. California Credit Corp. Retirement Plan, 2009 WL 700223 at *6 (S.D. Cal. Mar. 16, 2009).

Because Plaintiff has demonstrated factually a likelihood of success on the merits, Plaintiff has shown that the public interest favors granting her request for a temporary restraining order.

The plaintiff further moves this Court and requests that she be excused from the requirements of F.R.Civ.P. 65(c) for providing security. International Ass'n of Machinists & Aerospace Workers v. Eastern Airlines, Inc., 925 F.2d 6, 9 (1st Cir., 1990).

WHEREFORE, Plaintiff respectfully requests that this Court enter a preliminary injunction prohibiting the Defendants, BANK OF AMERICA, N.A. and CROUCH & RAYMER, or any of its agents, servants, attorneys, independent contractors, auctioneers, or any person acting on their behalf from conducting a mortgage foreclosure via executory process seeking to terminate the Plaintiff's

right, title, and interest in her property known and identified as 6 Lake Bernard

Court, Harvey, Louisiana 70058, until the judgment enters in this action.

Respectfully submitted this 4th day of October 2015.

Quintina Cheneau
290 MLK Jr Drive Ste., 104
Atlanta, GA 30312
(404) 468-2625